Deon Thomas
14626 Red Gum Street
Moreno Valley, CA 92555
dlthomas32@gmail.com
951-413-9071
No Phone/No Fax

FILED

2013 SEP -4  AM 10: 20

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY:_____

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ED  CV  13  -  01586  VAP

(SPx

Deon Thomas
      *Plaintiff*

v.

AMERICAN CAPITAL
ENTERPRISES., INC.;

RONALD G. MATHESON, as an
Individual
      *Defendants*

)
)
)
)
)
)
)
)
)
)

## VERIFIED COMPLAINT

## INTRODUCTION

1.  This is an action brought for damages out of violations of the Fair Debt Collection

    Practices Act ("hereinafter FDCPA") 15 U.S.C. § 1692, et seq., and Rosenthal Fair

    Debt Collection Practice Act, California Civil Code § 1788, et seq. (hereinafter

    "ROSENTHAL, and Fair Credit Reporting Act (hereinafter "FCRA") *15 U.S.C. § 1681*

    *et seq.*

/// 

///

FEE PAID

///

## **PRELIMINARY STATEMENT**

2. Plaintiff, Deon Thomas makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, which Plaintiff alleges on personal knowledge.

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety. Unless otherwise stated, the conduct engaged in by Defendant took place in Riverside County, California.

4. All actions of the Defendant violations as alleged were carried out knowingly, willfully, and with intent, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

5. The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which is harassing, oppressive or abusive practices by debt collectors; "it also requires debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt. FDCPA 15 U.S.C. § 1692, et seq.

6. FCRA *15 U.S.C. § 1681 et seq.,* was implemented to assess the quality of the furnisher's of information compliance to ensure compliance with the FCRA, as amended by the Fair and Accurate Credit Transaction Act of 2003 (FACT Act). Also, to determine the reliance you can place on furnisher's of information internal controls and procedures for monitoring the person's compliance with the FCRA. Further, to direct corrective action when you identify violations of law, or when the furnisher's of information policies or internal controls are deficient.

///

/// 

## JURISDICTION and VENUE

7.  This court has Jurisdiction pursuant to 15 U.S.C. § 1692k (d), 15 U.S.C. §1681p, 28 U.S.C § 1331, and 28 U.S.C § 1367, any claim under the state law brought by the Plaintiff are proper under the doctrine of supplemental jurisdiction.

8.  Venue is proper pursuant to 28 U.S.C. § 1391(b).

9.  The occurrences which give rise to this action occurred in Riverside County, California and Plaintiff resides in Riverside County, California.

10. Venue is proper in the Central District of California

## PARTIES

11. The Plaintiff in this lawsuit is Deon Thomas, (hereinafter "Plaintiff" or "Thomas") who at all times relevant herein was a resident of Riverside County, California.

12. The Defendant in this lawsuit is American Capital Enterprises, Inc., ("ACE" or Collectively "Defendants") who is an unknown entity with offices at 27919 Jefferson Ave., Ste. 206, Temecula, CA 92590, who transacts business as a debt collector in Riverside County, California.

13. The Defendant in this lawsuit is Ronald G. Matheson ("Matheson" or Collectively "Defendant"), as an individual, Principal of ACE. Matheson as individuals and within his own capacity as Principal of ACE. Matheson formulated, directed, and controlled the acts and practices of ACE, including the acts and practices alleged herein. At all times, relevant to this complaint, Matheson individually and acting through ACE is liable as a debt collector, has transacted business in Riverside County, California.

14. Matheson is liable because the corporate structure does not insulate principals, shareholders, officers, or directors from personal liability under the FDCPA." *See* Schwarm v. Craighead, 552 F. Supp. 2d 1056, 1070-71 (E.D. Cal. 2008); Robinson v. Managed Accounts Receivable Corp., 654 F. Supp. 2d 1051, 1059 (C.D. Cal. 2009).

## STATEMENT OF FACTS

15. Plaintiff is a natural adult person, is a consumer as defined in 15 U.S.C. §1692a (3), FCRA 15 U.S.C. §1681a(c), and a debtor as defined in Cal. Civil Code § 1788.2(h).

16. Matheson and ACE have alleged that Thomas incurred an obligation to pay money arising out of an alleged transaction in which the money, property, insurance or services which are the subject of the alleged transaction are primarily for personal, family or household purposes, and is therefore a "debt" as the term is defined by FDCPA 15 U.S.C. § 1692a(5), Cal. Civil Code § 1788.2(d) and that Thomas is obligated to pay them.

17. Matheson and ACE are debt collector as defined in 15 U.S.C. §1692a (6) and a collection agency as defined in Civil Code § 1788.2(c).

18. Defendant ACE, is a "furnisher of information" as that term is described in the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2 (a) & (b), and a "person" as defined by FCRA 1681a(b). *See* (Exhibit C, FCRA15 U.S.C. § 1681s-2 (a) & (b)).

19. At a time unknown, ACE acquired information regarding an alleged obligation that Plaintiff allegedly incurred and allegedly owing to ACE.

20. Defendants used instrumentalities of interstate commerce or the mails in a business, the principal purpose of which is the collection of any debt, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due by or to another person or entity.

21. In connection with the collection of an alleged debt, Matheson through its representative(s), employee(s) and/or agent(s) mailed an initial collection notice to Plaintiff dated on September 26, 2011.

22. Matheson through its representative(s), employee(s) and/or agent(s) knew or should have known that the alleged debt they attempted to collect was non-existent, because Plaintiff never had a credit transaction with ACE or any other entity that will make him liable to them, as they claimed in an initial collection notice mailed to Plaintiff dated on September 26, 2011.

23. Thomas sent a timely Dispute correspondence to ACE, demanding validation and cease and desist from any contact from ACE dated on October 3, 2011 and received by a Miss Adriana O. on October 7, 2011, by U.S. Postal Service, certified mail no. 70100780000033649561, disputing the validity of the noticed mailed to them dated on September 26, 2011.

24. ACE mailed a **SECOND separate and distinct** collection notice to Thomas dated on October 31, 2011, sent by Al Webb, and ACE requested payment from Thomas, thus continued collection action by failing to properly validate any alleged obligation allegedly due and owing by Thomas, after receiving validation and cease and desist demand dated on October 7, 2011, thus violating FDCPA 15 U.S.C. § 1692g(b). *See* (Exhibit A, FDCPA 15 U.S.C. § 1692g).

25. ACE second collection notice to Thomas dated on October 31, 2011, did not have any accompanying documentation to wit to validate their claim. Ace stated in pertinent parts in their collection notice:

"*USING INOFMATION PROVIDED BY THE ORIGINAL CREDITOR, WE HAVE*
*COMPLETED OUR INVESTIGATION AND VERIFIED THE ACCOUNT.*"

26.  To the contrary of the October 31, 2011 collection notice, they did not provide

information nor documentations with this notice, thus they continued collection action,

in violated FDCPA 15 U.S.C. § 1692g(b) and  § 1692e. *See* (Exhibit A § 1692g & B,

FDCPA 15 U.S.C. § 1692e).

27.  Thomas responded by sending a Certified Mail letter dated on November 5, 2011 to

ACE's October 31, 2011 collection notice, cordially information them, they sent an

unsubstantiated demand for payment, failed to validate and continued collection

actions, wherein they violated Thomas' rights according to the law.

28.  ACE mailed a **THIRD separate and distinct** collection notice to Thomas dated on

November 29, 2011, sent by Lisa Marsh, which **she** identified an account number

labeled as 2874036 and ACE requested payment of a nonexistent obligation from

Thomas, thus continued collection action by failing to properly validate any alleged

obligation allegedly due and owing by Thomas, after receiving validation and cease and

desist demand dated on November 5, 2011, thus violating FDCPA 15 U.S.C. §

1692g(b).

29.  Upon information and belief, ACE November 29, 2011collection notice violated,

FDCPA 15 U.S.C. § 1692e, due to the fact ACE knew or should have known they

provided false and misleading information.

30.  The documentation delivered to Plaintiff dated on November 29, 2013, had a cover

letter head labeled with ACE's name on it, and within the body of this letter, it had no

information regarding an amount, date of alleged delinquency, the status of alleged

delinquency, and no other entities named was provided, and they failed to provide the provisional requirements, in violation of § 1692g(a)(1)-(5).

31. The rest of the documentation attached to their collection notice did not have ACE's name within the content of the body. The amount that appeared in the attached documentation had an alleged amount that was wholly different then ACE previous letters dated on September 26, 2011, thus violating FDCPA 15 U.S.C. § 1692e and § 1692g(b).

32. Thomas responded with a letter dated on December 5, 2011 to ACE's November 29, 2011collection notice, by U.S. Postal Service, Certified mail/Return Receipt, cordially information them they sent an unsubstantiated demand for payment, failed to validate and continued collection actions, wherein they violated Thomas' rights according to the law.

33. ACE did not respond to Thomas' Dispute letter dated on December 5, 2011 and ACE's collection action still remain in dispute up to today's date.

34. Thomas obtained his consumer credit report with the Consumer Reporting Agency (CRA) Experian from Privacy Guard on or about December of 2011.

35. Thomas found after examination of his consumer credit reports that Defendant, ACE **obtained** his consumer report and had been reporting false and erroneous information to CRA Experian since December of 2011. Thomas had never had any business relationship of any kind with ACE or any other entity named by them and he has disputed multiple times with ACE, with dispute still remaining up to today's date, in violation of FCRA 15 U.S.C. § 1681b.

36. ACE knew or should have known they were communicating false, erroneous, unverified and invalidated information as a trade line to Experian, as they failed to validate Thomas' multiple disputes and demand letters and ACE failed to mark the account as disputed, violated FDCPA 15 U.S.C. § 1692e(8). *See* (Exhibit B, FDCPA 15 U.S.C. § 1692e).

37. Thomas filed disputes of the validity of the entry made by ACE with CRA Experian dated on December 13, 2011, by Certified Mail/Return Receipt.

38. As a result of Thomas disputes after the CRA's notified ACE, they failed to modify or delete from Experian, and the end result was Experian reported the information was updated and would remain.

39. In January of 2013, Thomas again obtained his consumer credit report with Experian, whereby he discovered ACE was still reporting false and erroneous information on Experian and Equifax.

40. On February 16, 2013 Thomas disputed again with Experian by Certified Mail/Return Receipt, as a result of Thomas' disputes after the CRA's notified ACE, and the entry placed by ACE was still reporting negatively on his consumer credit report and they did not remove entry.

41. The inaccurate and erroneous information placed by ACE were updated and information remained.

42. On March 19, 2013, Thomas sent yet another dispute notice to ACE, addressed to Ronald G. Matheson, President, informing him of the reporting inaccurate information on his consumer credit report. The details of Plaintiff's dispute are outlined in the letter.

43. Thomas has repeatedly attempted to resolve the controversy over his disputes and provide ample opportunity for ACE to engage in mitigation of damages and reach a settlement for their violations before taking civil action against them.

44. A collection notice was sent by Matheson to Thomas dated on August 19, 2013, which is a direct violation of FDCPA § 1962g(b), by failing to properly validate after receiving timely dispute from Thomas, as mention in¶ 23.

45. Matheson collection notice failed to provide statutory requirement, in violation of FDCPA § 1962g (1)-(5).

46. Upon information and belief, there is no written contract or obligation between Thomas and ACE or any other entity for that matter named by them, whereby documents may exist showing when or how an alleged credit transaction incurred, ACE failed to provide this to him, after multiple disputes by Thomas.

47. Upon information and belief, the inaccuracies include, but not limited to, the amount of the alleged debt, the date of alleged delinquency, the status of alleged delinquency, and the status of dispute by Plaintiff.

48. ACE did not provide a notice of such furnishing of negative information, in writing, to Plaintiff after multiple disputes.

49. ACE have repeatedly failed to conduct a proper reinvestigation upon Plaintiff multiple disputes and repeatedly failed to inform Experian that the account is in dispute for a period of 19 months, from **January of 2012 to the filing of this complaint.**

50. Upon information and belief ACE continued to report inaccurate information on Plaintiff's Experian consumer report, as a direct result of their failure to perform a reasonable and proper reinvestigation procedure.

51. Upon Plaintiff's information and belief ACE had never provided any signed verification, validation or accounting of any alleged account or copy of any signed contract or agreement by Thomas.

52. Upon Plaintiff's information and belief ACE failed to reinvestigate the alleged account after multiple disputes made by Thomas as required by the FCRA.

53. The amendments to the FCRA made by the Consumer Credit Reporting Act of 1996 raised the bar of compliance with the law by imposing a higher duty to reinvestigate on the original source providing information to the credit reporting agencies. Congress clearly intended the furnisher of credit date to perform a more exacting investigation than merely parroting their own internal data, which the consumer has disputed.

54. Upon Plaintiff's information and belief ACE ignored Thomas' timely demand for validations and disputes, and ACE avoidance of their legal obligation to a proper reinvestigate and go beyond merely electronic data obtained by the unverified and unauthenticated alleged account information, ACE has violated the clear directive Congress intended and enacted under 15 U.S C. § 1681d-2(b). *See* (Exhibit C, FCRA15 U.S.C. § 1681s-2(b)).

55. Not only have the ACE failed to comply with 15U.S.C. g 1681s-2(b), by not performing a reasonable reinvestigation, they had knowingly and willfully continued to furnish unverified and unauthenticated information to the credit reporting agencies for the past 19 months, since January of 2012 to the filing of this complaint. *See* (Exhibit C, FCRA15 U.S.C. § 1681s-2(b)).

56. Upon Plaintiff's information and belief ACE has knowingly reported inaccurate information about Thomas, after failing to reinvestigate to the major credit reporting

agency Experian damaging Thomas since at least January of 2012, in an attempt to coerce and deceive him into paying amounts not owed to them by Thomas.

57. Upon Plaintiff's information and belief ACE continued reporting of inaccurate information to the credit reporting agencies without performing proper reinvestigation after Thomas' multiple disputes not only violated FCRA 15 U.S C. § 1681s-2(b) the first time, but a violation occurs each and every time the furnisher knowingly and willfully does so.

58. Upon Plaintiff's information and belief, each and every time ACE furnishes information to the credit reporting agencies without first performing a reasonable reinvestigation, after the reinvestigation has been demanded constitutes a new and separate deliberate violation of the statute.

59. Upon Plaintiff's information and belief reporting of false and erroneous information to the credit reporting agencies is a violation FDCPA, 15 U.S C. § 1692e and § 1692g, which re-ages the relative statute of limitations on such violations each and every time they knowingly and willfully do it.

60. Upon Plaintiff's information and belief, in this instance, through the means described herein, in the course of collection an alleged non-existent debt from Plaintiff, Matheson had the authority to control and direct the debt collection activity of his representative(s), employee(s) and/or agent(s), directly and indirectly, but failed to do so.

61. Matheson had represented to Plaintiff, expressly or by implication, that the alleged debt was valid and that Plaintiff had an obligation to pay the alleged debt, knowing an alleged debt did not exist.

62. Any violations of FDCPA that may have occurred prior to one-year as required by the statute 1962k(d), are time barred and Plaintiff does not make a claim for that; however it is relevant to the case as far as a chronological order of events alleged herein.

63. Violation of FDCPA brought forth herein are within the statute of limitations as defined in the FCRA 15 U.S.C. § 1692k(d) and Cal. Civ. Code 1788.30(f).

64. Violation of FCRA brought forth herein are within the statute of limitations as defined in the FCRA 15 U.S.C. § 1681p.

65. Upon Plaintiff's information and belief ACE dissemination of inaccurate information about the Plaintiff has and is causing the following damages:

   a) Personal expenses related to disputing the allegedly inaccurate information;

   b) Injuries to his credit reputation, undue worry and loss of happiness inside of household resulting from the distribution of incorrect and disparaging information to parties both known and unknown;

   c) A diminished credit score which may hinder Plaintiff's ability to obtain credit in the future.

66. Upon Plaintiff's information and belief, there is no debt that could exist as to the basis of this instant action, rather the basis is the illegal, unconscionable and invasive behavior of Matheson and ACE in their attempts to collect a non-existent alleged debt from Thomas.  Thomas has attempted on multiple occasions with dispute letters to provide Matheson and ACE the opportunity to cure said egregious behavior to no avail.

67. Upon Plaintiff's information and belief Matheson by and through ACE's representative(s), employee(s) and/or agent(s) actions constitute conduct highly offensive to a reasonable person and as a result of Matheson's representative, employee

and/or agent(s) actions violated Plaintiff's rights.  Matheson by and through ACE's

representative(s), employee(s) and/or agent(s) conduct makes them liable to Plaintiff

for actual damages, statutory damages, punitive damages, costs, and any attorney's

fees.

**COUNT I**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. § 1681**
**WILLFUL NON-COMPLIANCE BY DEFENDANT AMERICAN CAPITAL**
**ENTERPRISES, INC.**

68.  Plaintiff restates and re-alleges herein all previous paragraphs 1-67.

69.  Discovery of violations brought forth herein regarding FCRA occurred from December

of 2011 to present and are within the statute of limitations as described in the FCRA15

U.S.C. § 1681p.

70.  Plaintiff is a consumer within the meaning of the FCRA 15 U.S.C. § 1681a(c).

71.  Experian is a credit reporting agency within the meaning of 15 U.S.C. § 1681a(f).

72.  Consumer credit report is a consumer report within the meaning of the FCRA 15 U.S.C.

§ 1681a(d).

73.  The FCRA, 15 U.S.C. § 1681b defines the permissible purpose for which a person may

obtain a consumer credit report.  *See* (Exhibit G, FCRA15 U.S.C. § 1681b).

74.  ACE is a "furnisher of information" as that term is described in the FCRA, 15 U.S.C. §

1681s-2 (a) & (b), and a "person" as defined by FCRA § 1681a(b).

75.  Thomas has never had any business dealings or any accounts with, made application for

credit from, made application for employment with, applied for insurance from, or

received a bona fide offer of credit from ACE, as described FCRA § 1681b.

76.  On December of 2011 ACE obtained the Experian consumer credit report of Thomas

with no permissible purpose in violation of FCRA 15 U.S.C. § 1681b.  Thomas had no

account whereby ACE could claim permissible purpose and said action were a clear violation of his privacy.  No claim of permissible purpose connected to the collection of a debt could exist because ACE was fully aware of the **"alleged account"** they were claiming were in dispute and they had not properly **"validated"** as per Thomas's timely demand.

77.  At no time did Thomas give his consent for ACE to acquire his consumer credit report from any credit reporting agency.

78.  Plaintiff has never had any business dealings or any account with, made application for credit from, made application for employment with, applied for insurance from, or received a bona-fide offer of credit from ACE to acquire consumer report from any credit reporting agency.

79.  ACE misrepresented the reason they obtained Plaintiff consumer credit report, and obtained the credit report under false pretense.

80.  On or about December of 2011, the action of ACE obtaining the Experian consumer credit report from the Plaintiff with no permissible purpose, is in violation of FCRA 15 U.S.C. § 1681b.

81.  ACE had a duty to properly ascertain if there was any legitimate permissible purpose before obtaining Thomas's credit report and ACE breached said duty.  There was no account that ACE had any rights or authority to collect to have had permissible purpose and therefore Thomas is entitled to damages for breach of said duty.

82.  Pursuant to 15 U.S.C. 1681n, any person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in and [sic] amount equal to the sum (l) any actual damages sustained by the

consumer as a result of the failure or damages of not less than $100.00 and not more than $1,000.00 (2) such amount of punitive damages as the court may allow, and (3) in the case of any successful action to enforce any liability under 15 U.S.C. 1681n, the costs of the action together with reasonable attorney's fees. *See* (Exhibit F, FCRA15 U.S.C. § 1681n).

**WHEREFORE**, Plaintiff demands judgment for damages against ACE for statutory damages of $1000.00, punitive damages to be determined at trial court, and costs, pursuant to 15 U.S.C. § 1681n.

<u>**COUNT II**</u>
**VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. § 1681 WILLFUL NON-COMPLIANCE BY DEFENDANT AMERICAN CAPITAL ENTERPRISES, INC.**

83. Plaintiff restates and re-alleges herein all previous paragraphs 1-67.

84. Discovery of violations brought forth herein regarding FCRA occurred from December of 2011 to present and are within the statute of limitations as described in the FCRA15 U.S.C. § 1681p.

85. Plaintiff is a consumer within the meaning of the FCRA 15 U.S.C. § 1681a(c).

86. Experian is a credit reporting agency within the meaning of 15 U.S.C. § 1681a(f).

87. Consumer credit report is a consumer report within the meaning of the FCRA 15 U.S.C. § 1681a(d).

88. ACE is a "furnisher of information" as that term is described in the FCRA, 15 U.S.C. § 1681s-2 (a) & (b), and a "person" as defined by FCRA 15 U.S.C. § 1681a(b).

89. Since January of 2012 to present date, ACE as a direct result of its failure to conduct a reasonable reinvestigation, has continuously reported information which it know or

should have known to be false and inaccurate to credit reporting agency Experian, in blatant violation of the FCRA 15 U.S.C. § 1681s-2(b).

90. To date ACE has committed at least 19 separate violation of 15 U.S.C. § 1681s-2(b), by deliberately failing to reinvestigate before reporting to the consumer reporting agencies to the best of Thomas's knowledge. Further violations may be identified in the discovery process.

91. Thomas, by filing a dispute with the consumer reporting agency Experian dated on December 13, 2011, invoked his private right of action to assert claims against ACE arising under FCRA 15 U.S.C. § 1681s-2(b).

92. At no time has ACE ever provided any valid justification they may have for reporting false and inaccurate information to the credit reporting agencies, even though Thomas made a timely demand that they do so. ACE had a duty to properly ascertain if there was any **legitimate** account belonging to Thomas before reporting such information to the credit reporting agencies, and ACE breached said duty. There was no account that ACE had any right to collect to have had lawful standing and authority to report on Thomas credit reports and therefore Thomas is entitled to damages for breach of said duty.

93. Thomas made multiple attempts to dispute and provide ample opportunity for ACE to engage in mitigation of damages and reach a settlement for their violations before taking civil action against them. Thomas was not able to settle this matter with ACE prior to litigation; however it was not for the lack of attempts.

94. Pursuant to 15 U.S.C. 1681n, any person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that

consumer in and [sic] amount equal to the sum (l) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100.00 and not more than $1,000.00 (2) such amount of punitive damages as the court may allow, and (3) in the case of any successful action to enforce any liability under 15 U.S.C. 1681n, the costs of the action together with reasonable attorney's fees.

**WHEREFORE**, Plaintiff demands judgment for damages against ACE for statutory damages of $1000.00, for each such violations, each publication, actual damages, punitive damages to be determined at trial court, and costs, pursuant to 15 U.S.C. § 1681n.

### COUNT III
### VIOLATION OF THE FCDPA 15 U.S.C. § 1692, et seq.
### By MATHESON AND AMERICAN CAPITAL ENTERPRISES, INC.

95. Plaintiff restates and re-alleges herein all previous paragraphs 1-67.

96. The Plaintiff is a consumer as defined in 15 U.S.C. $\S$ 1692a (3).

97. Matheson and ACE are debt collectors as defined in 15 U.S.C. $\S$ 1692a (6).

98. Defendant, ACE by reporting an "alleged" debt as a "debt collector" to a consumer reporting agency generating "communication" in connection with the collection of a debt which they know was incorrect, from January of 2012 to filing of this action, in violation of 15 U.S.C § 1692e(8).

99. Matheson and ACE violated 15 U.S.C § 1692e(2), by making false, deceptive, or misleading representation to the three consumer reporting agencies Experian on multiple occasions as to the character, amount or legal status of an alleged debt, after receiving multiple disputes from Thomas.

100. Matheson and ACE violated 15 U.S.C § 1692e (10) by use of false and deceptive

means to collect or attempt to collect a nonexistent alleged debt or obtain information concerning a consumer.

101. Matheson violated 15 U.S.C § 1692g (1-5), by failing to provide the required information in collection notice dated August 19, 2013.

102. ACE blatantly failed after initiating first communication September 26, 2011 to Thomas, in connection with the collection of an alleged debt and receiving validation notice within the 30 days requirement and multiple disputes, continued collection and failing to cease until they properly validated by reporting in Thomas consumer report from January of 2012 to filing of this action, in violation of 15 U.S.C § 1692g(b).

103. Matheson violated 15 U.S.C. § 1962g(b), by failing to properly validate after receiving timely dispute from Thomas, as mention in¶ 23.

104. ACE has not produced any evidence or factual documentation of any "alleged debt" Thomas could be responsible for, but violated Thomas with impunity for over one and one half years by continued violation of the consumer protection statutes.

105. Thomas has never had any business relationship with ACE or any person's named by them.

106. Due to the repeated and continuing violation of the FDCPA, Plaintiff is entitled to actual and statutory damages under 15 U.S.C § 1692(k).

**WHEREFORE,** Plaintiff demands judgment for $1000.00 damages individually against Matheson and ACE for each separate and distinct violations for actual damages, statutory, any attorney's fees and cost, pursuant to 15 U.S.C. § 1692(k).

## COUNT IV
## VIOLATION OF THE ROSENTHAL CAL. CIVIL CODE *§ 1788, et seq.*
## By MATHESON AND AMERICAN CAPITAL ENTERPRISES, INC.

107. Plaintiff restates and re-alleges herein all previous paragraphs 1-67.

108. Pursuant to § 1788.2(C) the Defendant are debt collectors, a person who in the ordinary course of business, regularly, on behalf of himself, herself or others, engages in debt collection.

109. Matheson and ACE are subject to the Rosenthal Fair Debt Collection Act Cal. Civil Code § 1788, et seq.

110. The Plaintiff is a consumer as defined in 15 U.S.C. § 1692a (3).

111. Defendant, ACE by reporting an "alleged" debt as a "debt collector" to a consumer reporting agency generating "communication" in connection with the collection of a debt which they know was incorrect, from January of 2012 to filing of this action, in violation of 15 U.S.C § 1692e(8).

112. ACE violated 15 U.S.C § 1692e(2), by making false, deceptive, or misleading representation to the consumer reporting agency Experian on multiple occasions as to the character, amount or legal status of an alleged debt, after receiving multiple disputes from Thomas.

113. Defendant violated 15 U.S.C § 1692e (10) by use of false and deceptive means to collect or attempt to collect a nonexistent alleged debt or obtain information concerning a consumer.

114. Matheson violated 15 U.S.C § 1692g (1-5), by failing to provide the required information in collection notice dated August 19, 2013.

115. ACE blatantly failed after initiating first communication September 26, 2011 to Thomas, in connection with the collection of an alleged debt and receiving validation notice within the 30 days requirement and multiple disputes, continued collection and

failing to cease until they properly validated by reporting in Thomas consumer report from January of 2012 to filing of this action, in violation of 15 U.S.C § 1692g(b).

116. Matheson violated 15 U.S.C. § 1962g(b), by failing to properly validate after receiving timely dispute from Thomas, as mention in¶ 23.

117. ACE has not produced any evidence or factual documentation of any "alleged debt" Thomas could be responsible for, but violated Thomas with impunity for nearly one and one half years by continued violation of the consumer protection statutes.

118. Thomas has never had any business relationship with ACE.

119.  Defendant violated ROSENTHAL 1788.13(l) any communication by a licensed collection agency to a debtor demanding money unless the claim is actually assigned to the collection agency.

120.  Defendant violated § 1788.17, et seq. of the ROSENTHAL by continuously failing to comply with the statutory regulations contained within the FDCPA, 15 U.S.C. § 1692, et seq.

**WHEREFORE,** Plaintiff demands judgment for $1000.00 damages individually against Matheson and ACE for each separate and distinct violations for actual or statutory damages, any attorney's fees and costs, pursuant to Cal. Civil Code § 1788.30(b).

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues as triable as matter of law.

Date:  September 4, 2013

Deon Thomas

## VERIFICATION

Plaintiff certify that he has read the pleadings set forth herein, and that to the best of his knowledge, information and belief, formed after reasonable inquiry, believes that he is well grounded in facts and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that they are not interposed for any improper purpose such as or needlessly increase the cost of litigation. I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in the City of Moreno Valley, County of Riverside, and State of California.

DATED: September 4, 2013

Deon Thomas

## Certificate of Service

I, Deon Thomas certify that I served the foregoing documents to the agent for process of service.

Deon Thomas

# EXHIBIT A

## TITLE 15 - COMMERCE AND TRADE
### CHAPTER 41 - CONSUMER CREDIT PROTECTION
### SUBCHAPTER V - DEBT COLLECTION PRACTICES

## § 1692g. Validation of debts

### (a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

### (b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### (c) Admission of liability

The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

### (d) Legal pleadings

A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

### (e) Notice provisions

The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

*15 USC 1692g*

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

(Pub. L. 90–321, title VIII, § 809, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 879; amended Pub. L. 109–351, title VIII, § 802, Oct. 13, 2006, 120 Stat. 2006.)

### References in Text

The Gramm-Leach-Bliley Act, referred to in subsec. (e), is Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1338. Title V of the Act is classified principally to chapter 94 (§ 6801 et seq.) of this title. For complete classification of this Act to the Code, see Short Title of 1999 Amendment note set out under section 1811 of Title 12, Banks and Banking, and Tables.

### Amendments

2006—Subsec. (b). Pub. L. 109–351, § 802(c), inserted at end "Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

Subsec. (d). Pub. L. 109–351, § 802(a), added subsec. (d).

Subsec. (e). Pub. L. 109–351, § 802(b), added subsec. (e).

### Effective Date

Section applicable only with respect to debts for which the initial attempt to collect occurs after the effective date of this subchapter, which takes effect upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, set out as a note under section 1692 of this title.

29

# EXHIBIT B

*15 USC 1692e*

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

## TITLE 15 - COMMERCE AND TRADE
### CHAPTER 41 - CONSUMER CREDIT PROTECTION
#### SUBCHAPTER V - DEBT COLLECTION PRACTICES

### § 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)  The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2)  The false representation of—

(A)  the character, amount, or legal status of any debt; or

(B)  any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3)  The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4)  The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5)  The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6)  The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

(A)  lose any claim or defense to payment of the debt; or

(B)  become subject to any practice prohibited by this subchapter.

(7)  The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8)  Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9)  The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11)  The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12)  The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13)  The false representation or implication that documents are legal process.

(14)  The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15)  The false representation or implication that documents are not legal process forms or do not require action by the consumer.

- 1 -



**(16)** The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a (f) of this title.

(Pub. L. 90–321, title VIII, § 807, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 877; amended Pub. L. 104–208, div. A, title II, § 2305(a), Sept. 30, 1996, 110 Stat. 3009–425.)

### Amendments

1996—Par. (11). Pub. L. 104–208 amended par. (11) generally. Prior to amendment, par. (11) read as follows: "Except as otherwise provided for communications to acquire location information under section 1692b of this title, the failure to disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose."

### Effective Date of 1996 Amendment

Section 2305(b) of div. A of Pub. L. 104–208 provided that: "The amendment made by subsection (a) [amending this section] shall take effect 90 days after the date of enactment of this Act [Sept. 30, 1996] and shall apply to all communications made after that date of enactment."

# EXHIBIT C

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

# TITLE 15 - COMMERCE AND TRADE
## CHAPTER 41 - CONSUMER CREDIT PROTECTION
### SUBCHAPTER III - CREDIT REPORTING AGENCIES

## § 1681s–2. Responsibilities of furnishers of information to consumer reporting agencies

(a) **Duty of furnishers of information to provide accurate information**

(1) **Prohibition**

(A) **Reporting information with actual knowledge of errors**

A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

(B) **Reporting information after notice and confirmation of errors**

A person shall not furnish information relating to a consumer to any consumer reporting agency if—

(i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

(ii) the information is, in fact, inaccurate.

(C) **No address requirement**

A person who clearly and conspicuously specifies to the consumer an address for notices referred to in subparagraph (B) shall not be subject to subparagraph (A); however, nothing in subparagraph (B) shall require a person to specify such an address.

(D) **Definition**

For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.

(2) **Duty to correct and update information**

A person who—

(A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate,

shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

(3) **Duty to provide notice of dispute**

If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

(4) **Duty to provide notice of closed accounts**

A person who regularly and in the ordinary course of business furnishes information to a consumer reporting agency regarding a consumer who has a credit account with that person shall notify the

agency of the voluntary closure of the account by the consumer, in information regularly furnished for the period in which the account is closed.

**(5)  Duty to provide notice of delinquency of accounts**

**(A)  In general**

A person who furnishes information to a consumer reporting agency regarding a delinquent account being placed for collection, charged to profit or loss, or subjected to any similar action shall, not later than 90 days after furnishing the information, notify the agency of the date of delinquency on the account, which shall be the month and year of the commencement of the delinquency on the account that immediately preceded the action.

**(B)  Rule of construction**

For purposes of this paragraph only, and provided that the consumer does not dispute the information, a person that furnishes information on a delinquent account that is placed for collection, charged for profit or loss, or subjected to any similar action, complies with this paragraph, if—

**(i)**  the person reports the same date of delinquency as that provided by the creditor to which the account was owed at the time at which the commencement of the delinquency occurred, if the creditor previously reported that date of delinquency to a consumer reporting agency;

**(ii)**  the creditor did not previously report the date of delinquency to a consumer reporting agency, and the person establishes and follows reasonable procedures to obtain the date of delinquency from the creditor or another reliable source and reports that date to a consumer reporting agency as the date of delinquency; or

**(iii)**  the creditor did not previously report the date of delinquency to a consumer reporting agency and the date of delinquency cannot be reasonably obtained as provided in clause (ii), the person establishes and follows reasonable procedures to ensure the date reported as the date of delinquency precedes the date on which the account is placed for collection, charged to profit or loss, or subjected to any similar action, and reports such date to the credit reporting agency.

**(6)  Duties of furnishers upon notice of identity theft-related information**

**(A)  Reasonable procedures**

A person that furnishes information to any consumer reporting agency shall have in place reasonable procedures to respond to any notification that it receives from a consumer reporting agency under section 1681c–2 of this title relating to information resulting from identity theft, to prevent that person from refurnishing such blocked information.

**(B)  Information alleged to result from identity theft**

If a consumer submits an identity theft report to a person who furnishes information to a consumer reporting agency at the address specified by that person for receiving such reports stating that information maintained by such person that purports to relate to the consumer resulted from identity theft, the person may not furnish such information that purports to relate to the consumer to any consumer reporting agency, unless the person subsequently knows or is informed by the consumer that the information is correct.

**(7)  Negative information**

**(A)  Notice to consumer required**

**(i)  In general**

If any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency described in section 1681a (p) of this title furnishes negative information to such an agency regarding credit

*15 USC 1681s-2*

*NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).*

extended to a customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer.

**(ii)**  Notice effective for subsequent submissions

After providing such notice, the financial institution may submit additional negative information to a consumer reporting agency described in section 1681a (p) of this title with respect to the same transaction, extension of credit, account, or customer without providing additional notice to the customer.

**(B)**  **Time of notice**

**(i)**  In general

The notice required under subparagraph (A) shall be provided to the customer prior to, or no later than 30 days after, furnishing the negative information to a consumer reporting agency described in section 1681a (p) of this title.

**(ii)**  Coordination with new account disclosures

If the notice is provided to the customer prior to furnishing the negative information to a consumer reporting agency, the notice may not be included in the initial disclosures provided under section 1637 (a) of this title.

**(C)**  **Coordination with other disclosures**

The notice required under subparagraph (A)—

**(i)**  may be included on or with any notice of default, any billing statement, or any other materials provided to the customer; and

**(ii)**  must be clear and conspicuous.

**(D)**  **Model disclosure**

**(i)**  Duty of Bureau

The Bureau shall prescribe a brief model disclosure that a financial institution may use to comply with subparagraph (A), which shall not exceed 30 words.

**(ii)**  Use of model not required

No provision of this paragraph may be construed to require a financial institution to use any such model form prescribed by the Bureau.

**(iii)**  Compliance using model

A financial institution shall be deemed to be in compliance with subparagraph (A) if the financial institution uses any model form prescribed by the Bureau under this subparagraph, or the financial institution uses any such model form and rearranges its format.

**(E)**  **Use of notice without submitting negative information**

No provision of this paragraph shall be construed as requiring a financial institution that has provided a customer with a notice described in subparagraph (A) to furnish negative information about the customer to a consumer reporting agency.

**(F)**  **Safe harbor**

A financial institution shall not be liable for failure to perform the duties required by this paragraph if, at the time of the failure, the financial institution maintained reasonable policies and procedures to comply with this paragraph or the financial institution reasonably believed that the institution is prohibited, by law, from contacting the consumer.

**(G)**  **Definitions**

For purposes of this paragraph, the following definitions shall apply:

**(i)**  Negative information

15 USC 1681s-2

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

The term "negative information" means information concerning a customer's delinquencies, late payments, insolvency, or any form of default.

**(ii)** Customer; financial institution

The terms "customer" and "financial institution" have the same meanings as in section 6809 of this title.

**(8) Ability of consumer to dispute information directly with furnisher**

**(A) In general**

The Bureau, in consultation with the Federal Trade Commission, the Federal banking agencies, and the National Credit Union Administration, shall prescribe regulations that shall identify the circumstances under which a furnisher shall be required to reinvestigate a dispute concerning the accuracy of information contained in a consumer report on the consumer, based on a direct request of a consumer.

**(B) Considerations**

In prescribing regulations under subparagraph (A), the agencies shall weigh—

**(i)** the benefits to consumers with the costs on furnishers and the credit reporting system;

**(ii)** the impact on the overall accuracy and integrity of consumer reports of any such requirements;

**(iii)** whether direct contact by the consumer with the furnisher would likely result in the most expeditious resolution of any such dispute; and

**(iv)** the potential impact on the credit reporting process if credit repair organizations, as defined in section 1679a (3) of this title, including entities that would be a credit repair organization, but for section 1679a (3)(B)(i) of this title, are able to circumvent the prohibition in subparagraph (G).

**(C) Applicability**

Subparagraphs (D) through (G) shall apply in any circumstance identified under the regulations promulgated under subparagraph (A).

**(D) Submitting a notice of dispute**

A consumer who seeks to dispute the accuracy of information shall provide a dispute notice directly to such person at the address specified by the person for such notices that—

**(i)** identifies the specific information that is being disputed;

**(ii)** explains the basis for the dispute; and

**(iii)** includes all supporting documentation required by the furnisher to substantiate the basis of the dispute.

**(E) Duty of person after receiving notice of dispute**

After receiving a notice of dispute from a consumer pursuant to subparagraph (D), the person that provided the information in dispute to a consumer reporting agency shall—

**(i)** conduct an investigation with respect to the disputed information;

**(ii)** review all relevant information provided by the consumer with the notice;

**(iii)** complete such person's investigation of the dispute and report the results of the investigation to the consumer before the expiration of the period under section 1681i (a)(1) of this title within which a consumer reporting agency would be required to complete its action if the consumer had elected to dispute the information under that section; and

**(iv)** if the investigation finds that the information reported was inaccurate, promptly notify each consumer reporting agency to which the person furnished the inaccurate

15 USC 1681s-2

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

information of that determination and provide to the agency any correction to that information that is necessary to make the information provided by the person accurate.

**(F)  Frivolous or irrelevant dispute**

**(i)**  In general

This paragraph shall not apply if the person receiving a notice of a dispute from a consumer reasonably determines that the dispute is frivolous or irrelevant, including—

**(I)**  by reason of the failure of a consumer to provide sufficient information to investigate the disputed information; or

**(II)**  the submission by a consumer of a dispute that is substantially the same as a dispute previously submitted by or for the consumer, either directly to the person or through a consumer reporting agency under subsection (b) of this section, with respect to which the person has already performed the person's duties under this paragraph or subsection (b) of this section, as applicable.

**(ii)**  Notice of determination

Upon making any determination under clause (i) that a dispute is frivolous or irrelevant, the person shall notify the consumer of such determination not later than 5 business days after making such determination, by mail or, if authorized by the consumer for that purpose, by any other means available to the person.

**(iii)**  Contents of notice

A notice under clause (ii) shall include—

**(I)**  the reasons for the determination under clause (i); and

**(II)**  identification of any information required to investigate the disputed information, which may consist of a standardized form describing the general nature of such information.

**(G)  Exclusion of credit repair organizations**

This paragraph shall not apply if the notice of the dispute is submitted by, is prepared on behalf of the consumer by, or is submitted on a form supplied to the consumer by, a credit repair organization, as defined in section 1679a (3) of this title, or an entity that would be a credit repair organization, but for section 1679a (3)(B)(i) of this title.

**(9)  Duty to provide notice of status as medical information furnisher**

A person whose primary business is providing medical services, products, or devices, or the person's agent or assignee, who furnishes information to a consumer reporting agency on a consumer shall be considered a medical information furnisher for purposes of this subchapter, and shall notify the agency of such status.

**(b)  Duties of furnishers of information upon notice of dispute**

**(1)  In general**

After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

**(A)**  conduct an investigation with respect to the disputed information;

**(B)**  review all relevant information provided by the consumer reporting agency pursuant to section 1681i (a)(2) of this title;

**(C)**  report the results of the investigation to the consumer reporting agency;

**(D)**  if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

    **(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

        **(i)** modify that item of information;

        **(ii)** delete that item of information; or

        **(iii)** permanently block the reporting of that item of information.

**(2) Deadline**

A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i (a)(1) of this title within which the consumer reporting agency is required to complete all actions required by that section regarding that information.

**(c) Limitation on liability**

Except as provided in section 1681s (c)(1)(B) of this title, sections 1681n and 1681o of this title do not apply to any violation of—

    **(1)** subsection (a) of this section, including any regulations issued thereunder;

    **(2)** subsection (e) of this section, except that nothing in this paragraph shall limit, expand, or otherwise affect liability under section 1681n or 1681o of this title, as applicable, for violations of subsection (b) of this section; or

    **(3)** subsection (e) of section 1681m of this title.

**(d) Limitation on enforcement**

The provisions of law described in paragraphs (1) through (3) of subsection (c) of this section (other than with respect to the exception described in paragraph (2) of subsection (c) of this section) shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title.

**(e) Accuracy guidelines and regulations required**

    **(1) Guidelines**

The Bureau shall, with respect to persons or entities that are subject to the enforcement authority of the Bureau under section 1681s of this title—

    **(A)** establish and maintain guidelines for use by each person that furnishes information to a consumer reporting agency regarding the accuracy and integrity of the information relating to consumers that such entities furnish to consumer reporting agencies, and update such guidelines as often as necessary; and

    **(B)** prescribe regulations requiring each person that furnishes information to a consumer reporting agency to establish reasonable policies and procedures for implementing the guidelines established pursuant to subparagraph (A).

**(2) Criteria**

In developing the guidelines required by paragraph (1)(A), the Bureau shall—

    **(A)** identify patterns, practices, and specific forms of activity that can compromise the accuracy and integrity of information furnished to consumer reporting agencies;

    **(B)** review the methods (including technological means) used to furnish information relating to consumers to consumer reporting agencies;

    **(C)** determine whether persons that furnish information to consumer reporting agencies maintain and enforce policies to ensure the accuracy and integrity of information furnished to consumer reporting agencies; and

*15 USC 1681s-2*

*NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).*

    **(D)** examine the policies and processes that persons that furnish information to consumer reporting agencies employ to conduct reinvestigations and correct inaccurate information relating to consumers that has been furnished to consumer reporting agencies.

(Pub. L. 90–321, title VI, § 623, as added Pub. L. 104–208, div. A, title II, § 2413(a)(2), Sept. 30, 1996, 110 Stat. 3009–447; amended Pub. L. 108–159, title I, § 154(a), title II, § 217(a), title III, §§ 312(a)–(e)(1), 314(b), title IV, § 412(a), Dec. 4, 2003, 117 Stat. 1966, 1986, 1989–1993, 1995, 2002; Pub. L. 111–203, title X, § 1088(a)(2)(D), (11), July 21, 2010, 124 Stat. 2087, 2090.)

## Prior Provisions

A prior section 623 of Pub. L. 90–321 was renumbered section 625 and is classified to section 1681t of this title.

## Amendments

2010—Subsec. (a)(7)(D). Pub. L. 111–203, § 1088(a)(11)(A), added subpar. (D) and struck out former subpar. (D) which related to duty of Board to prescribe a model disclosure.

Subsec. (a)(8)(A). Pub. L. 111–203, § 1088(a)(11)(B), which directed amendment of subpar. (A) by inserting ", in consultation with the Federal Trade Commission, the Federal banking agencies, and the National Credit Union Administration," before "shall jointly", was executed by making the insertion before "shall prescribe", to reflect the probable intent of Congress and the amendment by Pub. L. 111–203, § 1088(a)(2)(D). See below.

Pub. L. 111–203, § 1088(a)(2)(D), substituted "The Bureau shall" for "The Federal banking agencies, the National Credit Union Administration, and the Commission shall jointly".

Subsec. (e). Pub. L. 111–203, § 1088(a)(11)(C), added subsec. (e) and struck out former subsec. (e) which related to establishment and maintenance of accuracy guidelines and prescription of implementing regulations by the Federal banking agencies, the National Credit Union Administration, and the Commission.

2003—Subsec. (a)(1)(A). Pub. L. 108–159, § 312(b)(1), substituted "knows or has reasonable cause to believe that the information is inaccurate" for "knows or consciously avoids knowing that the information is inaccurate".

Subsec. (a)(1)(D). Pub. L. 108–159, § 312(b)(2), added subpar. (D).

Subsec. (a)(5). Pub. L. 108–159, § 312(d), designated existing provisions as subpar. (A), inserted heading, inserted "date of delinquency on the account, which shall be the" before "month" and "on the account" before "that immediately preceded", and added subpar. (B).

Subsec. (a)(6). Pub. L. 108–159, § 154(a), added par. (6).

Subsec. (a)(7). Pub. L. 108–159, § 217(a), added par. (7).

Subsec. (a)(8). Pub. L. 108–159, § 312(c), added par. (8).

Subsec. (a)(9). Pub. L. 108–159, § 412(a), added par. (9).

Subsec. (b)(1)(E). Pub. L. 108–159, § 314(b), added subpar. (E).

Subsec. (c). Pub. L. 108–159, § 312(e)(1), added subsec. (c) and struck out heading and text of former subsec. (c). Text read as follows: "Sections 1681n and 1681o of this title do not apply to any failure to comply with subsection (a) of this section, except as provided in section 1681s (c)(1)(B) of this title."

Subsec. (d). Pub. L. 108–159, § 312(e)(1), added subsec. (d) and struck out heading and text of former subsec. (d). Text read as follows: "Subsection (a) of this section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section."

Subsec. (e). Pub. L. 108–159, § 312(a), added subsec. (e).

## Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

## Effective Date of 2003 Amendment

Amendment by Pub. L. 108–159 subject to joint regulations establishing effective dates as prescribed by Federal Reserve Board and Federal Trade Commission, except as otherwise provided, see section 3 of Pub. L. 108–159, set out as a note under section 1681 of this title.

*3 5*

*15 USC 1681s-2*

*NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).*

Amendment by section 412(a) of Pub. L. 108–159 effective at end of 15-month period beginning on Dec. 4, 2003, see section 412(g) of Pub. L. 108–159, set out as a note under section 1681b of this title.

## Effective Date

Section effective 365 days after Sept. 30, 1996, with special rule for early compliance, see section 2420 of Pub. L. 104–208, set out as an Effective Date of 1996 Amendment note under section 1681a of this title.

## Model Disclosure Form

Pub. L. 108–159, title II, § 217(b), Dec. 4, 2003, 117 Stat. 1987, provided that: "Before the end of the 6-month period beginning on the date of enactment of this Act [Dec. 4, 2003], the Board shall adopt the model disclosure required under the amendment made by subsection (a) [amending this section] after notice duly given in the Federal Register and an opportunity for public comment in accordance with section 553 of title 5, United States Code."

[For definitions of terms used in section 217(b) of Pub. L. 108–159, set out above, see section 2 of Pub. L. 108–159, set out as a Definitions note under section 1681 of this title.]

# EXHIBIT D

7/30/13    15 USC § 1681b - Permissible purposes of consumer reports | Title 15 - Commerce and Trade | U.S. Code | LII / Legal Information Institute

Case 5:13-cv-01586-VAP-SP   Document 1   Filed 09/04/13   Page 38 of 42   Page ID #:123

# 15 USC § 1681b - Permissible purposes of consumer reports

**USC-prelim**

USCPrelim is a preliminary release and may be subject to further revision before it is released again as a final version.

Current through Pub. L. 113–9. (See Public Laws for the current Congress.)

### (a) In general

Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury.

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information—

(i) in connection with a business transaction that is initiated by the consumer; or

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

(G) executive departments and agencies in connection with the issuance of government–sponsored individually–billed travel charge cards.

(4) In response to a request by the head of a State or local child support enforcement agency (or a State or local government official authorized by the head of such an agency), if the person making the request certifies to the consumer reporting agency that—

(A) the consumer report is needed for the purpose of establishing an individual's capacity to make child support payments or determining the appropriate level of such

**U.S. CODE TOOLBOX**

SEARCH US CODE: [ ] Go

Wex: Commercial Law: Overview
@CLS: Clarke Business Law Institute

Download the PDF (4 pgs)
Title 15 USC, RSS Feed
Table of Popular Names
Parallel Table of Authorities

0



LAW ABOUT... ARTICLES FROM WEX

- Fair Credit Reporting Act (FCRA)
- Consumer credit
- Consumer Reporting Agencies (CRA)
- Personal Information
- Fair Debt Collection Practices Act

# EXHIBIT E

Search Cornell

Search all of LII...  Go

Follow [10K followers]  Like [12k]

USC   › Title 15 › Chapter 41 › Subchapter III › § 1681n     PREV NEXT

# 15 USC § 1681n - Civil liability for willful noncompliance

**USC-prelim**

USCPrelim is a preliminary release and may be subject to further revision before it is released again as a final version.

Current through Pub. L. 113–9. (See Public Laws for the current Congress.)

### (a) In general

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

  (1)

    (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

    (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

  (2) such amount of punitive damages as the court may allow; and

  (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

### (b) Civil liability for knowing noncompliance

Any person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000, whichever is greater.

### (c) Attorney's fees

Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

### (d) Clarification of willful noncompliance

For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and June 3, 2008, but otherwise complied with the requirements of section 1681c (g) of this title for such receipt shall not be in willful noncompliance with section 1681c (g) of this title by reason of printing such expiration date on the receipt.

  LII has no control over and does not endorse any external Internet site that contains links to or references LII.

U.S. CODE TOOLBOX

SEARCH US CODE: [        ]  Go

Wex: Commercial Law: Overview

@CLS: Clarke Business Law Institute

Download the PDF (1 pgs) �· Title 15 USC, RSS Feed
Table of Popular Names
Parallel Table of Authorities

0

Donations cover only 20% of our costs

LAW ABOUT... ARTICLES FROM WEX

- retainer
- Consumer credit
- Fair Debt Collection Practices Act
- Products liability
- Due process

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Thomas, Deon

**DEFENDANTS**
American Capital Enterprises, Inc.;
Ronald G. Matheson, as an individual

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Deon Thomas
14626 Red Gum St.
Moreno Valley, CA 92555

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

---

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☑ **MONEY DEMANDED IN COMPLAINT:** $ 23,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
FDCPA 15 U.S.C. § 1692, et seq.; California Civil Code § 1788, et seq.; FCRA 15 U.S.C. § 1681 et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☑ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | **REAL PROPERTY** | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 210 Land Condemnation | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | ☐ 465 Other Immigration Actions | | |
| | ☐ 290 All Other Real Property | | | | |

ED CV 13 - 01586 VAP (SPx)

**FOR OFFICE USE ONLY:** Case Number: _____  SEP - 4 2013

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                       ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                       ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                       ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date  September 4, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |